

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed April 2, 2010**                                                              **United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| LYNARVEL WASHINGTON and § | CASE NO. 09-30103-BJH-11 |
| KIMBERLY WASHINGTON, § | |
| § | |
| Debtors. § | |

### MEMORANDUM OPINION

Before the Court for confirmation is the Second Amended Plan of Reorganization (the "Plan") of Lynarvel and Kimberly Washington (the "Debtors"). The Court heard evidence in support of confirmation on March 3, 2010 and was satisfied that the Plan meets all of the requirements for confirmation, save one. Specifically, the Court was concerned that the Plan cannot be confirmed for its failure to comply with 11 U.S.C. § 1129(a)(15), which requires, in order for a plan to be confirmed, that

> in a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan –

**Memorandum Opinion**

> (A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, *whichever is longer*."
> (emphasis added).

Here, the Debtors own ten rental properties in addition to their homestead. Bank of America holds liens on those rental properties. The Plan classifies Bank of America's secured claims in Class 4, and proposes that the Debtors and Bank of America will enter into new notes with respect to those properties, with principal balances based on the current values of the properties. Each note is to be paid down over thirty years, with interest. Bank of America is left with a deficiency claim on each property, which is treated as an unsecured claim in Class 8. Under the Debtors' Plan, unsecured creditors in Class 8, who are estimated to hold claims aggregating as much as $750,000, are receiving, in quarterly payments over a period of sixty months, their pro rata share of an unsecured creditors pool. That pool is to be funded by payments from the Debtors of $500 per month for sixty months – *i.e.*, a total of $30,000. Accordingly, unsecured creditors are not receiving property of a value, as of the effective date of the plan, of not less than the amount of their claims under section 1129(a)(15)(A). Thus, if an unsecured creditor has objected to confirmation, Section 1129(a)(15)(B) must be satisfied in order for the Plan to be confirmed.

Section 1129(a)(15)(B) appears to require that the Debtors devote an amount equal to their disposable income to payments to creditors for five years or during the period for which the plan provides payments, *whichever is longer*. Here, the Plan proposes payments to Bank of America over thirty years, and the evidence at confirmation established that the Debtors' disposable income

**Memorandum Opinion** 2

is approximately $1,200 per month. The Court therefore asked for further briefing on the issue of whether the Debtors are required to devote an amount equal to the disposable income they would receive over the next thirty years to payments to creditors in order to satisfy Section 1129(a)(15)(B). The Debtors filed a letter brief on March 9, 2010.

Upon further reflection, the Court concludes that Section 1129(a)(15)(B) does not preclude confirmation of the Plan because that Code section was not triggered, as explained more fully below. Section 1129(a)(15), by its terms, applies only in a case in which the holder of an allowed unsecured claim *objects* to confirmation of the plan. Here, Hardy Credit Co. filed an objection to confirmation, but Hardy Credit Co. asserted entitlement to an administrative expense, not to an unsecured claim. Moreover, the objection of Hardy Credit Co. has been resolved by agreement and it did not appear at the hearing in opposition to confirmation. No other creditor, unsecured or otherwise, filed an objection to confirmation. The unsecured class, however, voted to reject the Plan.[1] The initial question the Court must decide is whether an unsecured class rejection is tantamount to an objection to confirmation by an unsecured creditor within the meaning of Section 1129(a)(15). The Court concludes that it is not, for several reasons.

First, several courts have expressly stated that a ballot cast to reject the plan is insufficient to invoke Section 1129(a)(15), and a separate document or pleading objecting to the plan must be filed before Section 1129(a)(15) is triggered. *See, e.g., In re Shat*, No. BK-S-08-23136-BAM, 2010 WL 702443 (Bankr. D. Nev. Feb. 22, 2010); *In re Sheridan*, 391 B.R. 287 (Bankr. E.D.N.C. 2008) (in *dictum*). Other courts have assumed, without discussion, that a ballot rejecting a plan is not

---

[1] Bank of America voted in class 4 to accept the Plan. It did not cast a ballot in the unsecured class.

**Memorandum Opinion**  3

equivalent to an objection to the plan. *In re Roedemeier*, 374 B.R. 264 (Bankr. D. Kan. 2007); *In re Bullard*, 358 B.R. 541 (Bankr. D. Conn. 2007). The rationale for this conclusion is, as the *Shat* court noted, that

> doing nothing more than casting a rejecting ballot might indicate an objection to the plan, but it is also consistent with the belief that the plan is legally sufficient, coupled with an acknowledgment by the creditor that it will be bound by the decision of a majority of creditors in its class or by an appropriate cramdown. In contrast, an objection requires more – at a minimum, the objector must affirmatively take a position that the plan proposed is objectionable on some legal ground; for example, that it is not proposed in good faith, or that the proposed payment does not return to the creditor its statutory entitlement.

*Shat*, 2010 WL 702443, at *2, n. 4.

Second, Congress does not appear to have used the terms "reject" and "object" interchangeably in the Bankruptcy Code. For example, Section 1126 of the Bankruptcy Code, which governs balloting, speaks in terms of "rejection," while Section 1128 of the Bankruptcy Code, which governs the confirmation hearing, provides that a party in interest may "object" to confirmation of a plan. The use of different words or terms within a statute "indicates that Congress intended to establish a different meaning for those words." *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 657 (5th Cir. 1999) (quoting *Mississippi Poultry Assoc. v. Madigan*, 992 F.2d 1359, 1363 (5th Cir. 1993)). In ordinary legal usage, a "rejection" is a "refusal to accept a contractual offer." *Black's Law Dictionary* 1400 (9th ed. 2009). As a plan of reorganization is a contract, it makes perfect sense that a ballot cast upon proposal of a plan is characterized as either an "acceptance" or "rejection" of that contract. In contrast, an objection is defined as "a formal statement opposing something that has occurred, or is about to occur, in court and seeking the judge's immediate ruling on the point." *Black's Law Dictionary*, 1178 (9th ed. 2009). A ballot is not

**Memorandum Opinion**                                                                                                          4

a statement in opposition which seeks an immediate ruling.

Third, and perhaps most importantly, Federal Rule of Bankruptcy Procedure 3020 provides that in a chapter 11 case, "[a]n objection to confirmation of the plan shall be filed and served on the debtor, the trustee, the proponent of the plan, any committee appointed under the Code, and any other entity designated by the court, within a time fixed by the court." In contrast, Federal Rule of Bankruptcy Procedure 3018 governs acceptances and rejections of a chapter 11 plan, and it provides that an "acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." As these two rules make crystal clear, an objection to confirmation and a rejection of the plan are simply two different things. Accordingly, the Court concludes that Section 1129(a)(15) is not implicated in this case.

One last point remains. Because Section 1129(a)(15) is not implicated in the absence of an objection to confirmation by an unsecured creditor, the Court need not determine whether the Debtors are contributing their disposable income to the Plan, or whether that section would require the Debtors to do so for thirty years. The Court notes, however, that the evidence established that the Debtors' disposable income is $1,200 per month – an amount in excess of the $500 per month that they will be paying to unsecured creditors. The Court recognizes that its ruling permits the Debtors to retain the extra $700 per month. The Court has therefore considered whether the Plan has been proposed in good faith under Section 1129(a)(3), although no party has raised the issue or objected to confirmation on this ground.[2] That the Debtors are permitted to retain $700 per month

---

[2] Under Federal Rule of Bankruptcy Procedure 3020(b)(2), if "no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues."

**Memorandum Opinion** 5

is unfortunate for unsecured creditors, who are obviously unhappy with their treatment under the Plan. However, the Court concludes that this result is permitted by the Bankruptcy Code as currently drafted. Because this result is authorized by the Bankruptcy Code, the Plan cannot have been proposed in bad faith. *In re Barnes*, 309 B.R. 888, 894 (Bankr. N.D.Tx. 2004) ("treatment of a class of claims in a manner specifically authorized by the Bankruptcy Code cannot constitute evidence that a plan was not proposed in good faith."). As in *Barnes*, no party has submitted any evidence that the Plan has not been proposed in good faith.

As the Court has found no other legal impediment to confirmation, the Plan will be confirmed. Counsel for the Debtor is directed to submit a separate Order confirming the Plan within ten (10) days.

# # # END OF MEMORANDUM OPINION # # #